704 A.2d 612

COMMONWEALTH of Pennsylvania, Appellant,

v.

$9,847.00 U.S. CURRENCY, Arthur J. Dougherty, Appellee.

Supreme Court of Pennsylvania.

Argued Dec. 7, 1995.

Decided Dec. 24, 1997.

Joseph C. Peters, Letty A. Kress, Robert A. Graci, Syndi L. Guido, Jerome T. Foerster, Harrisburg, for the Com.

David Rudovsky, Philadelphia, for A.J. Dougherty.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY and CASTILLE, JJ.

### OPINION OF THE COURT

CASTILLE, Justice.

 The sole issue in this case is whether the Due Process Clause of the Fourteenth Amendment to the United States Constitution provides a constitutional right to the appointment of counsel in civil forfeiture proceedings brought under the Controlled Substances Forfeitures Act.[1] Because civil forfeiture does not implicate a person's liberty interest and only implicates a person's property interest, we hold that there is no right to appointment of counsel in civil forfeiture proceedings.

1. 42 Pa.C.S. § 6801–6802.

The record indicates that in November of 1989, Pennsylvania State Police troopers executed a search warrant at the residence of appellee, Arthur Dougherty, and seized $9,847.00 in United States Currency, approximately two ounces of marijuana, records of purported drug transactions and various drug paraphernalia, including a small scale containing cocaine residue.[2] As a result of the search, appellee was arrested and charged with various drug offenses. Pursuant to a plea agreement, appellee pleaded guilty and was sentenced to a term of imprisonment.

In 1992, the Commonwealth filed a petition for civil forfeiture pursuant to the Controlled Substances Forfeiture Act seeking forfeiture of the confiscated $9,847.00 in United States currency, alleging that the money was subject to forfeiture under 42 Pa.C.S. § 6801(a)(6)(i)(A) & (B) as the proceeds from illegal drug transactions. Appellee filed a statement of indigency with the court and requested the appointment of counsel to represent him in the forfeiture action. The trial court initially appointed an attorney to represent appellee, but that appointment was later rescinded due to a conflict of interest. The subsequent appointment of a second attorney was also rescinded due to a conflict of interest, and a third attorney was appointed. The third attorney filed a petition to vacate the appointment on the grounds that appellee was not entitled to court-appointed counsel in a civil forfeiture proceeding. Although the record does not indicate the disposition of the petition to vacate the appointment of the third attorney, the trial court denied appellee's subsequent motion for appointment of counsel on April 8, 1993. However, on appeal to the Commonwealth Court, the Commonwealth Court concluded that appellee was constitutionally entitled to court-appointed counsel under the Fourteenth Amendment to the United States Constitution based upon its reasoning that civil forfei-

2. $9,763.00 of the money was found in a kitchen cabinet along with the scale, the transaction records and a water pipe. The remaining $84.00 was on the washer. The Commonwealth alleged in the forfeiture petition that $1,250 of the money had been matched by serial numbers to money used for undercover purchases of drugs on September 19, 1989, and November 8, 1989. Marijuana was found in a kitchen drawer, on the coffee table, in the bathroom and in a bedroom.

ture "is a proceeding at which the government is attempting to exact punishment," and, therefore, reversed the trial court's decision. *Commonwealth v. $9,847.00 U.S. Currency*, 161 Pa.Commw. 548, 564, 637 A.2d 736, 744 (1994).

As a threshold matter, the Commonwealth initially contends that this matter constituted an interlocutory appeal to the Commonwealth Court, which should not have been permitted. Generally, an order which does not put a party to a civil suit out of court is not immediately appealable, even where it raises a question as to that party's right to counsel. *Middleberg v. Middleberg*, 427 Pa. 114, 115, 233 A.2d 889, 890 (1967) (quashing as interlocutory an appeal from an order disqualifying counsel of choice due to conflict of interest). Because the trial court did not certify this issue for appeal as an interlocutory appeal by permission under 42 Pa.C.S. § 702(b),[3] the Commonwealth asserts that the Commonwealth Court should have quashed the appeal as interlocutory. Even though the Commonwealth is correct, because we believe that this case raises an issue of immediate public importance and that an immediate appeal may well advance the ultimate determination of this case, we assume plenary jurisdiction pursuant to 42 Pa.C.S. § 726.[4] *See Silver v. Downs*, 493 Pa. 50, 55–56, 425 A.2d 359, 362 (1981) (assuming plenary jurisdic-

3. **Interlocutory appeals by permission.—**
 When a court or other government unit, in making an interlocutory order in a matter in which its final order would be within the jurisdiction of an appellate court, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter, it shall so state in such order. The appellate court may thereupon, in its discretion, permit an appeal to be taken from such interlocutory order.
 42 Pa.C.S. § 702(b).

4. **Extraordinary jurisdiction—**
 Notwithstanding any other provision of law, the Supreme Court may, on its own motion or upon petition of any party, in any matter pending before any court or district justice of this Commonwealth involving an issue of immediate public importance, assume plenary jurisdiction of such matter at any stage thereof and enter a final order or otherwise cause right and justice to be done.
 42 Pa.C.S. § 726.

tion over an interlocutory appeal from order disqualifying township solicitor from representing township officers).

 Turning to the issue now before this Court, in certain limited situations, the Due Process Clause of the Fourteenth Amendment to the United States Constitution may require court appointed counsel in civil matters. In *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the United States Supreme Court set forth three factors which must be weighed to determine whether there is a right to court-appointed counsel in a civil matter: (1) the private interest at stake; (2) the government interest at stake; and (3) the likelihood of an erroneous decision. *Id.* at 335, 96 S.Ct. at 903. There is a presumption, however, that "an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty." *Lassiter v. Dept. of Social Services*, 452 U.S. 18, 26, 101 S.Ct. 2153, 2159, 68 L.Ed.2d 640 (1981) (no *per se* right to court-appointed counsel in proceeding to terminate parental rights). Taken together, these cases require that the outcome of the examination of the three factors enunciated in *Mathews* be weighed against the *Lassiter* presumption that an indigent is only entitled to appointed counsel when his physical liberty is at stake. *Lassiter, supra* at 27, 101 S.Ct. at 2159–60.

To determine whether appellant has a right to court-appointed counsel in this civil forfeiture proceeding, we will examine the factors set forth in *Mathews* and *Lassiter*.

Addressing the first factor of *Mathews*, in a civil forfeiture proceeding, the private interest at stake is always a property interest. *See Commonwealth v. Wingait Farms*, 547 Pa. 332, 340, 690 A.2d 222, 226 (1997) (the forfeiture statute, 42 Pa.C.S. § 6802, provides that forfeiture proceedings are *in rem*). The United States Supreme Court has recognized that property interests do not require the same level of due process protection as when interests in life or liberty are at stake. *See, e.g., Walters v. National Assoc. of Radiation Survivors*, 473 U.S. 305, 105 S.Ct. 3180, 87 L.Ed.2d 220 (1985) (upholding fee limitation which effectively prevents claimants from retain-

ing counsel in administrative proceedings for Veterans' Administration benefits because the only interest at stake was a property interest in money); *Santosky. v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (holding that the burden of proof in proceedings to terminate parental rights is "clear and convincing evidence," while a "preponderance of the evidence" standard is sufficient in property matters); *May v. Anderson*, 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221 (1953) (child custody rights are "far more precious to appellant than property rights.").

■ These decisions have as a common denominator the theory that property interests are generally accorded less protection than are liberty interests. Appellee's only interest in this matter is a property interest thus invoking a lesser level of due process protection.

Addressing the second factor of *Mathews*, the government interest at stake in a civil forfeiture proceeding is also largely financial, both in terms of the financial proceeds arising from the forfeiture, and in terms of the financial cost of providing counsel to indigent claimants in all civil forfeiture proceedings. Contrary to the Commonwealth Court's reasoning that the cost of providing counsel to indigents cannot justify a denial of court-appointed counsel in civil forfeiture proceedings, the United States Supreme Court acknowledged that the substantial cost involved in appointing counsel to an entire class of cases is a relevant consideration in *Gagnon v. Scarpelli*, 411 U.S. 778, 787–88, 93 S.Ct. 1756, 1762, 36 L.Ed.2d 656 (1973):

> [W]e think that the Court of Appeals erred in accepting respondent's contention that the State is under a constitutional duty to provide counsel for indigents in all probation or parole revocation cases. While such a rule has the appeal of simplicity, it would impose direct costs and serious collateral disadvantages without regard to the need or the likelihood in a particular case for a constructive contribution by counsel.

\* \* \*

Certainly, the decisionmaking process will be prolonged and the financial cost to the State—for appointed counsel, counsel for the State, a longer record, and the possibility of judicial review—will not be insubstantial.

Furthermore, the government has an additional interest in deterring illegal drug transactions by depriving those who illegally deal in controlled substances of the ill-gotten profits of those endeavors and of the instrumentalities used in aiding violations of controlled substance laws. The government has determined that this interest is advanced through forfeiture of all proceeds arising from violations of the Controlled Substance, Drug, Device and Cosmetic Act[5] and of all property used in the facilitation of those violations.[6] We find that the government interest in this case is entitled to significant weight, and we further find that the method chosen by the government to effectuate this interest is reasonably related to furthering its interest.

Addressing the third factor of *Mathews,* the risk of an erroneous decision in civil forfeiture cases under the Controlled Substances Forfeitures Act is generally minimal. In most cases, a forfeiture proceeding will be preceded by either a criminal conviction or a guilty plea to a violation of the Controlled Substance, Drug, Device and Cosmetic Act. The present case is illustrative. The risk of erroneous deprivation of property here is particularly slight given that appellee has pleaded guilty to various drug offenses, and the property subject to forfeiture is currency found in close proximity to other evidence of illegal drug transactions, including marijuana and a scale containing cocaine residue.[7] Furthermore, $1,250 of the currency seized was traceable directly to undercover drug transactions undertaken during Pennsylvania State Police investigations. Given the quantum of evidence in the

5. 35 P.S. § 780–101 *et seq.*

6. See 42 Pa.C.S. § 6801.

7. Under the forfeiture act, there is a rebuttable presumption that any money and negotiable instruments found in close proximity to controlled substances are the proceeds of illegal sales of controlled substances. 42 Pa.C.S. § 6801(a)(6)(ii).

Commonwealth's possession and given appellee's plea in the related criminal matter, there is little likelihood of an erroneous deprivation of property in this case.[8]

Accordingly, an analysis of the *Mathews* factors as applied to this matter, reveals that: the property interest at stake commands a lesser level of due process protection; the government interest in deterring illegal drug activity by confiscating the profits therefrom is significant; and the risk of an erroneous decision is minimal due to both appellant's guilty plea to various drug offenses and to the location of the currency when found. Thus, the *Mathews* factors alone weigh against a finding of a right to the appointment of counsel in this case. Such a finding is further supported by weighing the substantial burden to the government of providing counsel to an entire class of claimants not previously entitled to appointed counsel.

■ After considering the *Mathews* factors, we must then weigh them against the *Lassiter* presumption that the appointment of counsel is not required in cases which do not implicate a physical liberty interest.

> [T]he Court's precedents speak with one voice about what "fundamental fairness" has meant when the Court has considered the right to appointed counsel, and we thus draw from them the presumption that an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty. It is against this presumption that all the other elements in the due process decision must be measured.

*Lassiter*, 452 U.S. at 26–27, 101 S.Ct. at 2159. That presumption is a heavy one which is not easily overcome. In *Lassiter*, the Court acknowledged that the private interest at stake—the potential termination of parental rights—was "extremely important," that the state shared that interest and had a

---

8. The Commonwealth Court reasoned that, even if the Commonwealth established that the currency in question was the proceeds of illegal drug transactions, the forfeiture could still violate the Excessive Fines Clause of the Eighth Amendment. However, given that appellee has no right in property which was illegally acquired, this argument is unpersuasive.

relatively weak pecuniary interest, and that complexity of the termination proceedings could make the risk of an erroneous deprivation "insupportably high." Still the Court declined to find a right to court-appointed counsel unless "the parents' interests were at their strongest, the state's interests were at their weakest, and the risks of error were at their peak." 452 U.S. at 31, 101 S.Ct. at 2162.

In the present case, since the weighing of the *Mathews* factors alone does not support a finding that appellant is entitled to the appointment of counsel, then the *Mathews* factors as applied to this case are clearly insufficient to overcome the heavy presumption of *Lassiter* that appointment of counsel is not required in cases which do not implicate physical liberty. Accordingly, we conclude that the Due Process Clause of the Fourteenth Amendment to the United States Constitution does not require that court-appointed counsel be provided to indigent claimants in civil forfeiture cases under Pennsylvania's Controlled Substances Forfeitures Act.[9]

Because a claimant in a civil forfeiture proceeding is not in danger of a loss of personal liberty should he be unsuccessful at trial, we now hold that there is no constitutional right to the appointment of counsel for indigent claimants in civil forfeiture matters under either the United States Constitution.[10] Therefore, the order of the Commonwealth Court is reversed and the case is remanded to the Court of Common Pleas.

NIX, Former C.J., did not participate in the decision of this case.

**9.** This holding is consistent with that of other courts which have addressed this issue. *United States v. $292,888.04 U.S. Currency*, 54 F.3d 564 (9th Cir.1995); *United States v. 1604 Oceola, Wichita Falls, Texas*, 803 F.Supp. 1194 (N.D.Tex.1992); *United States v. 1606 Butterfield Rd. Dubuque, Iowa*, 786 F.Supp. 1497 (N.D.Iowa 1991); *United States v. 4204 Cedarwood, Matteson, IL*, 614 F.Supp. 183 (D.C.Ill.1985); *Resek v. State*, 706 P.2d 288 (Alaska 1985); *People v. $30,000 United States Currency*, 35 Cal.App.4th 936, 41 Cal.Rptr.2d 748 (1995); *Morgenthau v. Garcia*, 148 Misc.2d 900, 561 N.Y.S.2d 867 (1990).

**10.** Because appellee did not claim that he had a right to court-appointed counsel under the Pennsylvania Constitution in his appeal to the Commonwealth Court, this issue was waived below. Pa. R.A.P. 302(a).